UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 17 CR 283 (LAP)

FRANKIE REYES, a/k/a Biscuit,

Defendant.

------------------------------x

New York, N.Y.
March 2, 2022
11:05 a.m.

Before:

HON. KATHARINE H. PARKER,

Magistrate Judge

APPEARANCES

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
ADAM HOBSON
Assistant United States Attorney

PETER ENRIQUE QUIJANO
HARVEY FISHBEIN
Attorneys for Defendant

(Case called)

MR. HOBSON: Good morning, your Honor. Adam Hobson, for the government.

THE COURT: Hi. How are you?

MR. QUIJANO: Good morning, Judge Parker. For defendant, Frankie Reyes, Harvey Fishbein and Peter Quijano. Mr. Reyes is present and ready to proceed.

MR. FISHBEIN: Good morning.

THE COURT: Hi. Nice to see you both.

And good morning, Mr. Reyes.

THE DEFENDANT: Good morning.

THE COURT: I'm Judge Parker, and we're here for a plea allocution in this matter.

I have before me a one-count superseding information that contains charges against you.

Count One charges you with participating in a racketeering conspiracy, in violation of Title 18 of the United States Code, Section 1962(d).

The conspiracy allegedly took place from in or about 2012 up to and including in or about May 2017, in the Southern District of New York and elsewhere, and pertains to your activities in connection with the Wild Card Crips gang.

Have you seen a copy of the information?

THE DEFENDANT: Yes.

THE COURT: Counsel, have you discussed the

information with your client, and does he waive its public reading?

MR. QUIJANO: Your Honor, we have discussed it with him, and he does waive a public reading of the information.

THE COURT: Because this is a new information, I think, as a technical matter, I need to go over your presentment rights, so I'm going to explain certain constitutional rights that you have.

You have the right to remain silent. You're not required to make any statements. Even if you've already made statements to the authorities, you don't need to make any further statements. Any statements that you do make can be used against you.

You have the right to be released, either conditionally or unconditionally, pending trial, unless I find that there are no conditions that would reasonably assure your presence at future court appearances and the safety of the community.

If you're not a U.S. citizen, you have the right to request that a government attorney or law enforcement official notify a consular office from your country of origin that you've been arrested, and, in some cases, the Court has to give that notice regardless.

You have the right to be represented by a lawyer during all court proceedings, including this one, and during

all questioning by the authorities.

Do you understand your rights as I've just explained them?

THE DEFENDANT: Yes, your Honor.

THE COURT: Before we go any further, I also am obliged to review the government's obligations under Federal Law of Criminal Procedure 5(f). This is information that the government has to produce that could be helpful to your defense and relevant in your decision to plead.

Under this rule, the government is obliged to disclose to the defense all information, whether admissible or not, that is favorable to the defendant, material either to guilt or to punishment and known to the government. The government must make good-faith efforts to disclose such information to the defense as soon as reasonably possible after its existence becomes known to the government. As part of these obligations, the government must disclose information that can be used to impeach the trial testimony of a government witness, and must do so sufficiently in advance of trial in order for the defendant to make effective use of it at trial.

These obligations are continuing ones and apply to information whether the government credits it or not. Additionally, "government" is an expansive term and includes any federal, state, and local prosecutors, law enforcement officers, and other officials who have participated in the

investigation and prosecution of this matter, whether or not such officials are still part of the team, and the government has an affirmative obligation to seek from all these sources all information subject to disclosure.

The government's failure to comply may result in a number of serious consequences, including evidentiary sanctions, dismissal of the criminal charges, and sanctions on any responsible lawyer for the government.

Does the government understand these obligations, and do you confirm that you have fulfilled them?

MR. HOBSON: Yes, your Honor.

THE COURT: I will enter a written order confirming the government's obligations after this proceeding.

Mr. Reyes, I now want to return to a discussion of the charges against you. The document that contains the charge to which you've indicated you wish to plead guilty is called a superseding information. This is a document that was prepared and issued by the United States Attorney, not a grand jury.

Under the United States Constitution, you have a right to be charged by an indictment, which is issued by a grand jury, instead of by an information. A grand jury is a group of 23 ordinary citizens who are called to jury service to hear the government's evidence in criminal cases and decide whether the evidence is sufficient to justify bringing you to trial.

In order to return an indictment, at least 12 of the

grand jurors must vote in favor of indictment, finding that there is probable cause to believe that an offense was committed and that you committed it.

If you give up your right to have the charges against you presented to the grand jury, the case will proceed against you based on the United States Attorney's information just as if you had been indicted.

Do you understand what I have just explained?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, I have a copy of a waiver of indictment form that you have signed. It's not dated.

Was this signed today?

MR. QUIJANO: It was, your Honor.

THE COURT: Okay. I'm going to put in March 2nd here.

Mr. Reyes, did you have an opportunity to discuss the waiver of indictment form with your counsel before signing it?

THE DEFENDANT: Yes, your Honor.

THE COURT: And did they explain to you the advantages and disadvantages of waiving indictment?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have any threats been made to you or promises been made to you to get you to waive indictment?

THE DEFENDANT: No, your Honor.

THE COURT: And do you still wish to give up your right to be charged by a grand jury?

THE DEFENDANT: Yes, your Honor.

THE COURT: The record should reflect that Mr. Reyes has waived indictment. We will now proceed with the plea, as I understand that you wish to plead guilty to this count in the superseding information.

I have another form in front of me. It is called a consent to proceed before a United States magistrate judge on a felony plea allocution. What this form says is that you know you have the right to have your plea taken by a United States district judge, but that you're agreeing to have your plea taken by a U.S. magistrate judge, such as myself. As a magistrate judge, I have authority to take your plea, with your consent, and you're still entitled to all the same rights and protections as if you were before the district judge, and you will be sentenced by a district judge.

Before you signed the consent form, did your lawyers explain it to you?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did you sign it voluntarily?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Your consent is accepted.

Now, I'm going to ask you some personal questions and some questions about the crime to which you are going to plead guilty. It is necessary to place you under oath before we go any further, so I am going to ask the deputy to place you under

oath.

(Defendant sworn)

THE DEPUTY CLERK: Could you please state your name for the Court?

THE DEFENDANT: Frankie Reyes.

THE COURT: Mr. Reyes, you've now been placed under oath, so this means that any statements that you make here may be used against you by the government in a prosecution for perjury, or for making false statements.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: I'm going to explain certain rights that you have, and ask you certain questions, as I mentioned. The purpose of my questions is to make sure that you understand your rights and to make sure that you're voluntarily pleading guilty of your own free will and because you are, in fact, guilty of the crime to which you're pleading guilty.

Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: If at any time you don't understand one of my questions, or you want to talk with your lawyer, just say so. Okay?

THE DEFENDANT: Okay.

THE COURT: What's your full name?

THE DEFENDANT: Frankie Reyes.

THE COURT: And how old are you?

THE DEFENDANT: Twenty-seven.

THE COURT: Can you put that a little closer to your mouth, and, actually, under the new court COVID rules, you're permitted to take off your mask while answering questions.

Okay, great. Thank you.

Are you a U.S. citizen?

THE DEFENDANT: Yes.

THE COURT: The reason I ask that question is because pleading guilty to a felony can have serious immigration consequences.

How far did you go in school?

THE DEFENDANT: Ninth grade.

THE COURT: Are you currently, or have you recently been, under the care of a doctor or mental health professional?

THE DEFENDANT: No.

THE COURT: Do you have any condition that affects your ability to see or to hear?

THE DEFENDANT: No.

THE COURT: Do you have any condition that affects your ability to make judgments or decisions for yourself?

THE DEFENDANT: No.

THE COURT: Have you ever been treated or hospitalized for mental illness?

THE DEFENDANT: Not that I know, no.

THE COURT: Have you been treated or hospitalized for alcoholism or drug addiction?

THE DEFENDANT: No.

THE COURT: As you sit here today, are you under the influence of any mind-altering drug or alcohol?

THE DEFENDANT: No.

THE COURT: How are you feeling physically today?

THE DEFENDANT: Good.

THE COURT: Good? Good.

Is your mind clear today?

THE DEFENDANT: Yes.

THE COURT: And do you understand what's happening in this proceeding?

THE DEFENDANT: Yes.

THE COURT: Does either counsel have any objection to Mr. Reyes' competence to plead?

MR. HOBSON: No, your Honor.

MR. QUIJANO: No, your Honor.

THE COURT: Mr. Reyes, I'm now going to explain certain constitutional rights that you have. These are rights that you will be giving up if you enter a guilty plea, so please listen carefully.

Under the Constitution and laws of the United States, you have a right to plead not guilty to the charges contained in the information. Do you understand?

THE DEFENDANT: Yes.

THE COURT: And if you plead not guilty, you would be entitled under the Constitution to a speedy and public trial by a jury of the charge against you. Do you understand?

THE DEFENDANT: Yes.

THE COURT: At the trial, you'd be presumed innocent and the government would be required to prove you guilty beyond a reasonable doubt before you could be found guilty, and you could not be convicted unless a jury of 12 people agreed unanimously that you are guilty beyond a reasonable doubt.

Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you decided to go to trial, at that trial, and at every stage of your case, you would have the right to be represented by a lawyer, and if you could not afford one, a lawyer would be appointed to represent you at the government's expense. Even if you retain private defense counsel and if you ran out of money, an attorney would be appointed to continue to represent you. You're entitled to a lawyer all the way through trial and not just for a guilty plea, so your decision to plead guilty should not depend on whether or not you can hire a lawyer.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: During a trial, witnesses for the

prosecution would have to come to court and testify in your presence, where you could see and hear them, and your lawyer could cross-examine those witnesses. If you wanted, your lawyer could offer evidence on your behalf. And you also would be able to use the Court's power to compel witnesses to come to court and testify in your defense even if they didn't want to come.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: At a trial, you'd have the right to testify in your own defense if you wanted to, but you'd also have the right not to testify. And if you chose not to testify, that could not be used against you in any way. No inference or suggestion of guilt could be permitted from the fact that you did not testify.

Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you were convicted at trial, you'd have the right to appeal that verdict to a higher court. Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: And, as I said before, you have the right to plead not guilty. Even right now, even as you sit here today for the purposes of entering a guilty plea, you have the right to change your mind and persist in a not-guilty plea and

go to trial. But if you do plead guilty and your plea is accepted, you will give up the right to a jury trial and all the other rights that go with it that I've just described.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Finally, if you do plead guilty, you're also giving up the right not to incriminate yourself, and I am going to ask you questions about what you did in order to satisfy myself that you are actually guilty. By pleading guilty, you'll be admitting to your factual, as well as your legal, guilt.

Do you understand this?

THE DEFENDANT: Yes, your Honor.

THE COURT: I'm now going to review the charge against you and the consequences of pleading guilty.

Count One, as I said earlier, charges you with participating in a racketeering conspiracy, in violation of Title 18 of the United States Code, Section 1962(d), from in or about 2012 up to and including in or about May 2017, in the Southern District and elsewhere, in connection with the Wild Card Crips gang. The pattern of racketeering is alleged to consist of multiple acts involving murder, attempted murder, conspiracy to murder, as well as offenses involving possession and sale of heroin, 280 grams and more of crack cocaine, five kilograms and more of cocaine, and amounts of oxycodone and

marijuana. You're charged with committing at least two acts of racketeering in the conduct of the affairs of the Wild Card Crips enterprise.

I'm going to ask the government now to state the elements of this crime. The elements are things that the government has to prove beyond a reasonable doubt at trial in order for you to be convicted.

Please, Mr. Hobson.

MR. HOBSON: Your Honor, Count One of the information has four elements:

First, that the enterprise alleged in the information existed;

Second, that the enterprise affected interstate or foreign commerce;

Third, that the defendant was employed by or associated with the enterprise;

And, fourth, that the defendant knowingly and willfully became a member of the conspiracy, that is, that he agreed that either he or another person associated with the enterprise would commit two or more racketeering acts in furtherance of the conspiracy.

THE COURT: Thank you.

Mr. Reyes, do you understand what the government just described?

THE DEFENDANT: Yes, your Honor.

THE COURT: I'm now going to tell you the maximum possible penalty for this crime. The maximum means the most that could possibly be imposed. It does not mean that is what you necessarily would receive, but by pleading guilty, you're exposing yourself to the possibility of receiving any combination of punishments up to the maximum I'm about to describe.

The maximum term of imprisonment for this offense is 20 years. This crime also carries a maximum term of supervised release of five years.

Supervised release means that after you're released from prison, you may be subject to supervision by the probation department, and if you're placed on supervised release and then violate any condition of that release, the district judge can revoke the term of supervised release previously imposed and return you to prison without giving any credit for time previously served on postrelease supervision.

In addition to the restrictions on your liberty, the maximum possible punishment for this crime includes the maximum fine of $250,000, twice the gross monetary gain derived from the offense, or twice the gross monetary loss to persons other than yourself, whichever is greatest.

The Court also can order restitution to the victims of these crimes in an amount to be determined by and pursuant to a schedule set by the Court, and by pleading guilty, you're

agreeing to make restitution.

The Court is also required to impose a mandatory special assessment, or fine, of $100.

Now, as I mentioned earlier, you told me that you are a citizen, but I'm obliged to tell you that if you were not a U.S. citizen, a guilty plea means that you may be removed from the United States and denied admission to the United States or citizenship in the future.

Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: A guilty plea also may result in the loss of certain valuable civil rights, to the extent that you have them today or could obtain them in the future. These could include the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm.

Do you understand this?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand the charge against you and the consequences of pleading guilty, Mr. Reyes?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that if you enter a guilty plea, that you will not be able to withdraw it, and the only remaining step in the case will be sentencing?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that even if you're surprised or disappointed by your sentence, you'll still be bound by your guilty plea?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you had enough time to talk with your lawyers about the charges against you and how you wish to plead?

THE DEFENDANT: Yes, your Honor.

THE COURT: And have you had enough time to talk with your lawyers about the consequences of any plea, including the immigration consequences?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are you satisfied with your lawyer's representation of you?

THE DEFENDANT: Yes, your Honor.

THE COURT: I have a plea agreement before me. It's dated January 3rd of 2022, and it bears your signature from today.

Did you, in fact, sign this plea agreement today?

THE DEFENDANT: Yes, your Honor.

THE COURT: And did you read it before you signed it?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did you discuss it with your lawyers before you signed it?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did your lawyers explain all of the terms and conditions in it?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand its terms and conditions?

THE DEFENDANT: Yes, your Honor.

THE COURT: Apart from what's contained in the plea agreement, have any promises been made to you to get you to plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: Has anyone threatened you or tried to coerce you into pleading guilty?

THE DEFENDANT: No, your Honor.

THE COURT: In the plea agreement, the government indicates that a computation of your sentence under the part of our law called the sentencing guidelines would result in a sentence of 240 months in prison because the applicable sentencing range under the guidelines exceeds the statutory maximum sentence of 20 years.

The plea agreement also states that under the guidelines, a computation of the fine range would result in a fine of between $50,000 and $500,000.

Under the plea agreement, neither you, nor the government is allowed to argue to the sentencing judge for a calculation that is different from the ones in this agreement,

and it also provides that neither you, nor the government will seek or suggest any upward or downward departure from the stipulated sentencing guideline range, except that you may seek a sentence outside of the agreed-upon guideline range based on factors to be considered under another part of our law, Title 18 of United States Code, Section 3553(a).

I want to make sure that you understand that the government reserves the right to seek an adjusted guidelines range if it learns new information about your criminal history or if you failed to clearly demonstrate acceptance of responsibility or if it's determined that you've engaged in conduct that's currently unknown to the government that constitutes obstruction of justice or if you commit another crime.

Do you understand all of this?

THE DEFENDANT: Yes, your Honor.

THE COURT: I also want to make sure that you understand that the Court and the probation office are not bound by any of the calculations in the letter, in the plea agreement letter. Judge Preska, who is the sentencing judge, is free to do, and, in fact, obliged to do, her own calculation of the appropriate sentencing range in your case, and that could result in a sentencing range that differs from the one in the plea agreement.

Judge Preska has discretion to give you a prison

sentence below or above the range set forth in the letter or that she independently calculates is the appropriate range, anywhere up to the maximum sentence I told you about earlier.

Do you understand this?

THE DEFENDANT: Yes, your Honor.

THE COURT: In determining an appropriate sentence, Judge Preska will make, as I said, her own independent determination of the appropriate sentencing guideline range, and she will consider other things, such as possible departures under the guidelines, factors set forth in Title 18 of the United States Code, Section 3553(a), and a presentence report prepared by the probation department in advance of your sentencing. And before you're sentenced, you will have a chance to challenge any facts in that report; you'll be able to look at it with your lawyer in advance. Ultimately, Judge Preska will determine your sentence based on all of these factors, and that sentence may be more severe than you expect, but you won't be able to withdraw your guilty plea at that point.

Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: Under the plea agreement, you're agreeing to make restitution determined by the Court. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Under the plea agreement, you're admitting that you encouraged and coordinated the shooting that resulted in the murder of Jonathan Martinez. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that under the plea agreement, you cannot challenge your conviction on appeal or otherwise on the ground that the government failed to produce certain information that might have been helpful to you at trial?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you understand that under the terms of the plea agreement, so long as the district judge sentences you to a prison term of no longer than 240 months and a fine of no more than $500,000, you're giving up your right to challenge your sentence, whether by direct appeal, through a petition for a writ of habeas corpus, or otherwise?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that you're also giving up your right to challenge the $100 special assessment and any term of supervised release imposed by the Court up to the maximum I told you about earlier, whether by direct appeal, a petition for writ of habeas corpus, or otherwise?

THE DEFENDANT: Yes, your Honor.

THE COURT: Also, if you are not a citizen of the United States, your guilty plea and conviction would

presumptively result in your mandatory deportation and removal from the United States. And if you plead guilty, you'd have no right to withdraw your plea by virtue of any adverse immigration consequences regardless of any advice you may have received from your lawyer or other people.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Before I go on, are there any other provisions of the plea agreement that the government would like me to review with Mr. Reyes?

MR. HOBSON: No, your Honor.

THE COURT: And, Mr. Quijano, anything else that you would like me to review in the plea agreement with your client?

MR. QUIJANO: No, your Honor.

THE COURT: Mr. Reyes, have any promises been made to you concerning the actual sentence you will receive to influence you to plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: And now that you've been advised of the charges against you, the possible penalties you face, and the rights that you're giving up, do you still wish to plead guilty to Count One of the superseding information?

THE DEFENDANT: Yes, your Honor.

THE COURT: Is this decision voluntary and made of your own free will?

THE DEFENDANT: Yes, your Honor.

THE COURT: With respect to Count One, how do you plead, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Are you pleading guilty because you, in fact, committed the offenses to which you're pleading guilty?

THE DEFENDANT: Yes, your Honor.

THE COURT: Tell me, in your own words, what you did that makes you guilty of the crime charged in the information. And just take it slowly. Okay?

THE DEFENDANT: From approximately 2012 to May 2017, I was --

THE COURT: Just speak a little bit more into the microphone so that the court reporter can hear you and I can hear you. Thank you.

THE DEFENDANT: -- I was a part of the Wild Card Crips in the Bronx, New York, that agreed with other members of the group to commit crimes in the Bronx and elsewhere, such as conspiring and shooting at individuals, including rival gang members; carrying and using firearms; and the selling of drugs, such as about 200 grams of heroin and about 200 grams of crack.

As to the murder, in about March 2015, I passed a message from one member of the group to others to shoot at a rival gang member. While doing these things, I knew that they were illegal.

THE COURT: Did you know that what you were doing was joining a gang and assisting with the activities of the gang?

THE DEFENDANT: Yes, your Honor.

THE COURT: Does defense counsel believe there's a sufficient factual predicate for a plea?

MR. QUIJANO: I do, your Honor.

THE COURT: Are there any other questions you'd like me to ask your client?

MR. QUIJANO: No, your Honor.

THE COURT: Is there any reason that your client should not be permitted to plead guilty today?

MR. QUIJANO: No reason, your Honor.

THE COURT: Okay. Thank you.

Does the government believe there's a sufficient factual predicate for the plea?

MR. HOBSON: Yes, your Honor.

THE COURT: All right.

Are there any other questions you'd like me to ask him?

MR. HOBSON: No, your Honor.

THE COURT: Mr. Reyes, this all took place in the Bronx, Manhattan, where?

THE DEFENDANT: Bronx.

THE COURT: In the Bronx, okay. Thank you.

Mr. Hobson, does the government represent that it has

sufficient evidence to establish guilt beyond a reasonable doubt at trial?

MR. HOBSON: He does, your Honor.

THE COURT: Would you like to make a proffer?

MR. HOBSON: Your Honor, that evidence would include, among other things: The testimony of cooperating witnesses who were members of the gang, undercover drug buys from the gang, and autopsy reports regarding the murder.

THE COURT: Thank you.

Mr. Reyes, is there anything about this proceeding or what I've said that you have not understood?

THE DEFENDANT: No, your Honor.

THE COURT: Based on your responses to my questions and my assessment of your demeanor during this proceeding, I find that you are competent to enter a guilty plea, and I'm satisfied that you understand your rights, including your right to go to trial, and that you are aware of the consequences of your plea, including the sentence that may be imposed, and that you're voluntarily pleading guilty, and that you've admitted that you are guilty as charged to Count One of the superseding information. So, for these reasons, I will recommend that the district judge accept your plea.

Mr. Hobson, will the government order a copy of the transcript and also prepare a presentence report summary for purposes of the presentence report?

MR. HOBSON: Yes, your Honor.

THE COURT: Has Judge Preska set any date for sentencing?

MR. HOBSON: No, your Honor. We would suggest the Court set a control date approximately three months out, and then we'll reach out to Judge Preska's chambers to confirm the date.

THE COURT: Okay. Thank you.

I assume defense counsel will also be available within the next two weeks or so, to meet with probation?

MR. QUIJANO: Of course, your Honor.

THE COURT: All right. Thank you.

So I will set a control date -- how about June 29 for a control date?

MR. HOBSON: That sounds fine, your Honor.

MR. QUIJANO: That's fine, your Honor.

THE COURT: Okay, great.

Anything else from the government?

MR. HOBSON: No, your Honor.

THE COURT: Anything else from defense?

MR. QUIJANO: No, your Honor.

THE COURT: Okay. We're adjourned. Thank you.

* * *